**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.

SKYHOP TECHNOLOGIES, INC.
a Delaware corporation, SKYHOP
GLOBAL, LLC a Florida limited
liability company, KRISTINE SCOTTO,
an Individual,

     Plaintiffs,

vs.

PRAVEEN NARRA, an individual,
INDYZEN, INC., a California
corporation, d/b/a AppDevelopment.com,
Inc; d/b/a Tech.US, Inc.,

     Defendants.

_____/

## <u>COMPLAINT</u>

Plaintiff, SkyHop Technologies, Inc. ("SkyHop Tech"), SkyHop Global, LLC ("SkyHop Global"), and Kristine Scotto, ("Scotto") (collectively, "Plaintiffs"), by and through the undersigned, file their complaint against Defendants Praveen Narra ("Narra"), and Indyzen, Inc., d/b/a AppDevelopment.com, Inc; d/b/a Tech.US, Inc. ("Indyzen") (collectively, "Defendants") and allege as follows:

## INTRODUCTION

1.     SkyHop Tech owns a certain proprietary software technology that includes: SkyPlan, SkyHop Crew's IOS Application and Android Application, and SkyHop Driver's IOS Application and Android Application (collectively the "Software" or "SkyHop Apps").

*Skyhop Technologies, et al.  v.  Praveen Narra, et al.*
Complaint

2.      SkyHop Tech licenses the Software to SkyHop Global, a company that provides ground transportation services to commercial airlines' crew members (*i.e.* pilots and flight attendants) at airports throughout the United States.

3.      The Software is the central nervous system of SkyHop Global's entire operation. SkyHop Global relies on the Software to get airlines' crew members to and from airports on time. Airline crews depend on this technology for their transportation and travelers throughout the country depend on the airline crews to transport them to their destinations.

4.      Currently, SkyHop Global has approximately 80 contracts with 15 airlines (including, Delta Airlines, American Airlines, Southwest Airlines, United Airlines), and it operates in 21 cities throughout 11 states. SkyHop Global has 460 employees.

5.      The SkyHop Apps were developed over the course of approximately seven years. Since 2014, SkyHop Tech has paid Indyzen approximately $2.6 Million to develop and provide maintenance services to the Software.

6.      In January 2021, SkyHop Tech's President, Scotto, advised Narra that she was planning to hire in-house developers, who would take over the Software's development and maintenance needs. Narra, refused to transfer the possession and control of the Software to SkyHop Tech.  Instead, Narra demanded a $1.1 Million payment in exchange for the possession and control of the Software.

7.      In this action, SkyHop Tech seeks to recover possession and control of its Software from Narra, who is unlawfully withholding a substantial portion of the Software from SkyHop Tech, and who is causing Indyzen to withhold the other portions of the Software. SkyHop Tech also seeks preliminary and permanent injunctions to prevent Defendants from shutting-down or otherwise affecting the operations of the Software.

8.      Any shutdown of the Software would produce devastating and irreparable damages to SkyHop Tech and SkyHop Global's businesses.

9.      The irreparable harm visited from any impairment of the Software far exceeds the harm to SkyHop Tech and SkyHop Global.  Because the contracting airlines' crews depend on the Software to arrange their transportation from and, particularly, back to the airports, any shutdown or interference with the Software—even a brief shutdown—would create a domino-effect that would result in a series of delays and interfere with air travel throughout the United States.

10.     Plaintiffs are also seeking a declaratory judgment to determine the arbitrability of the claims that Indyzen set forth in a demand for arbitration, filed on March 12, 2021 against the Plaintiffs, under the American Arbitration Association's Commercial Arbitration Rules (the "Arbitration"). Because the Indyzen does not have a right to arbitrate the claims set forth in the Arbitration, Plaintiffs seek to enjoin the Arbitration or to preclude their participation.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 in so far as this case sets forth claims arising under 18 U.S.C. § 1030. Also, under 28 U.S.C. § 1367, supplemental jurisdiction exists over the state law claims stated herein, each of which arise out of a common nucleus of operative facts from which the federal claims arise.

12.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in so far as this is an action between citizens of different States where the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13.     The Court has general personal jurisdiction over Defendants under Fla. Stat. §§ 48.193(2).  Alternatively, the Court has specific personal jurisdiction over Defendants pursuant to Fla. Stat. §§ 48.193(1)(a)(1)-(2), and Fla. Stat. § 48.193 (1)(a)(6).

14.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, a substantial part of the property that is the subject of this action is located in this district, and Defendants are subject to specific personal jurisdiction in this District.

## PARTIES

15.     SkyHop Tech is a Delaware corporation with its headquarters in Broward-County, Florida.

16.     SkyHop Global is a Florida limited liability company, with its headquarters in in Broward-County, Florida, and whose members are natural persons residing in Florida and Massachusetts.

17.     Scotto is an individual, who is a resident of Broward-County, Florida and is otherwise *sui juris*. Scotto is the President of SkyHop Tech and the CEO of SkyHop Global.

18.     Narra is an individual, who is a resident of California and is otherwise *sui juris*. Narra owns and controls Indyzen.  Narra is in possession of the Software, or a substantial portion of the Software, as he (in his personal capacity and not through Indyzen) holds an Amazon Web Services account where the Software or a portion thereof is housed.  Narra, in his personal capacity, is in control of the Software withholding the portions of the Software in his possession and otherwise, though his control of Indyzen, Narra is preventing the transfer of the portions of the Software in Indyzen's possession.

19.     Indyzen, is a company organized and existing under the laws of the State of California. Indyzen developed the Software for SkyHop Tech, and provides on-going software development and maintenance services to SkyHop Tech from 2014 to 2021. Indyzen is in possession of any portions of SkyHop Tech's Software not directly under Narra's control.

## GENERAL ALLEGATIONS

20.     Flight delays in the United States place significant strain on air travel and costs airlines, passengers, airports, and society billions of dollars each year.  Because commercial airplanes cannot flight without pilots and crews, SkyHop Global through SkyHop Tech's software is addressing a key component of flight delays—getting airline crews to the airports on time.

21.     SkyHop Tech's Software is uniquely designed to allow SkyHop Global to deliver its services with pinpoint precision and reduce flight delays as a result of crew members' tardiness. Through use of the SkyHop Apps, crew members are picked up at precisely the location and time scheduled. SkyHop Tech's GPS metrics show that SkyHop Global's pickups are on-time 98% of the time—eliminating one of the causes for flight delays.

22.     The airline crews, that are currently using SkyHop Tech's Software are doing so in real-time and are depending on its reliability.  Practically, no amount of coordination and notice to the airlines could replace the airlines crews' reliance on the Software, such that any interruption of the Software would unavoidably result in flight delays and interruptions in interstate travel.

**I.**  **Description of the SkyHop Apps**

23.     SkyHop Tech's Software represents a quantum-leap in airline-crew transportation. It provides a user-friendly, data-rich, application-based system to coordinate the transportation for airline crews in an industry that, before SkyHop Global's use of the Software, was the model of inefficiency and waste.

24.     The Software has three major components: SkyPlan, SkyHop Crew, and SkyHop Driver.

### A. *The SkyPlan Web-based Program*

25.     SkyPlan is a password-protected back-end web-based program that communicates with and supports the SkyHop Crew and SkyHop Driver applications.  SkyPlan allows for the collection and control of data to facilitate cost-efficient transportation of commercial airline crews to and from airports.

26.     Every month, flight manifests are uploaded into SkyPlan to create schedules to pick-up and drop-off crew members. SkyPlan's scheduling screens track the pick-up date, the scheduled pick-up time, any changes to scheduled pick-up time, the city, the airport, the airline, the number of crew members to be picked up, the driver ID, the vehicle ID, and the drop-off location.

27.     In 2021, even in the midst of the pandemic travel-slow down, SkyHop Global has averaged approximately 1,400 trips per day. SkyPlan's scheduling screens coordinate and track each and every trip that SkyHop Global schedules, changes, cancels, and completes.

28.     SkyPlan's scheduling screen is constantly being updated in real-time to account for the constant flight changes and the airlines' repeated changes that include additional pick-ups and pick-up cancellations.

29.     SkyPlan scheduling also necessarily tracks the approximately 435 drivers that SkyHop Global has throughout the 21 cities in which it operates. The drivers' schedules are reconciled with the trip schedules and flight manifests changes.

30.     SkyPlan tracks all vehicles in SkyHop Global's fleet; specifically, it tracks the inventory of SkyHop Global's vehicles, and tracks the data necessary to ensure that the vehicles meet the regulatory and contractual safety and maintenance standards.

31.     SkyPlan is used to track the contractual payment terms with different airlines in different cities (*i.e.* price of manifest scheduled trips, add-on trips, cancelled trips, and out-of-network trips).

32.     Dispatchers use SkyPlan's dispatching screens to coordinate all dispatching functions. Using these screens dispatchers can see the driver of each vehicle, which vehicle has crew on board, which vehicles are assigned to trips, vehicle location, the traffic flows drivers will be facing, and other information. SkyHop Global's dispatchers use this information to make real-time changes to schedules and assignment of drivers to different trips as needed to ensure punctuality and efficiency.

33.     SkyPlan organizes data collected by the SkyHop Driver App, SkyHop Crew App, and other third-party websites and vendors such as real-time GPS location of vehicles, the traffic flows, trip distances, trip time, driver safety metrics, crew members' ratings and comments concerning drivers and vehicles, among other data.

34.     This data is used to create a series of different reports, which in turn allow SkyHop Global's management team to not only improve the quality and efficiency of its services, but also to maximize the safety of its drivers, crew, and the public.

35.     The functionality of SkyPlan is not unlike the commercial ride-sharing applications such as Uber and Lyft, but specifically tailored to the necessities of commercial airlines and the complexities of travel to and from major United States airports.

36.     SkyPlan is currently housed in two servers that are hosted by Amazon Web Services.

37.     Amazon Web Services account number ending in ***9911 contains SkyHop Tech's Production Server, which houses the operational version of SkyPlan (the "AWS Production

Server Account"), and the account number ending in ***4401 contains SkyHop Tech's Staging Server, which houses the testing version of SkyPlan (the "AWS Staging Server Account") (collectively the "AWS Accounts").

38. SkyHop Tech pays for the AWS Accounts, where its servers are hosted.

39. The AWS Staging Server Account is in Narra's name, individually, and the address on that Account is Narra's personal residence. Upon information and belief, when Narra originally opened the AWS Staging Server Account for SkyHop Tech, he opened it in his name, individually.

40. The AWS Production Server Account is currently in Indyzen's name, but it uses Narra's personal residence as the address for that Account.

41. SkyHop Tech does not have the passwords to the AWS Accounts.

42. The passwords to the AWS Accounts are in Narra's possession and in his sole control. The passwords to the AWS Accounts may also be in Indyzen's possession.

43. On February 9, 2021, SkyHop Tech, through its attorneys, demanded the return of the passwords to the AWS Accounts, but Narra refused to provide it and he prohibited Indyzen from returning same.

### B. The SkyHop Driver App

44. The SkyHop Driver Apps are IOS and Android mobile applications that can be download from Apple's AppStore or Google Play.

45. The SkyHop Driver Apps are password protected applications that can be used only by SkyHop Global's drivers.

46. SkyHop Driver Apps communicate with SkyPlan to fetch data from SkyPlan, and to share data about the drivers, their performance, safety metrics, among other data.

47.     SkyHop Driver Apps also allow for open lines of communication with dispatch and crew members, they allow drivers to manage their availability, coordinate pick-ups with dispatchers, crew members and other drivers, and it allows the drivers to make adjustments for delayed flights.

48.     Further,  the SkyHop Driver Apps also provides drivers with navigation and GPS tracking to assist them with identifying the best travel routes.

49.     SkyHop Global's drivers can use the SkyHop Driver Apps to view their performance metrics to provide them with motivation for continued improvement that could lead to job-growth.

### C.  The SkyHop Crew App

50.     The SkyHop Crew Apps are IOS and Android mobile applications that can be downloaded from Apple's AppStore or Google Play.

51.     The SkyHop Crew App is a password protected application that is used only by airline crew members, who download the SkyHop Crew App and create a profile therein.

52.     The SkyHop Crew App communicates with SkyPlan to fetch data from SkyPlan.

53.     With the SkyHop Crew App, flight crews can alert SkyHop Global of their arrival and provide for 2-way communication via text or call with their SkyHop Global driver. The SkyHop Crew App also allows flight crews to communicate with SkyHop Global dispatchers and their own Airlines, all with the touch of a finger.

54.      The SkyHop Crew Apps allow crew members to track their driver's location. The SkyHop Crew App also provides crew members with a profile and photograph of their driver for increased safety.  Crew members can also use the SkyHop Crew App to rate or leave a review of the drivers' services, which also promotes increased safety.

55.        SkyHop Crew App communicates with the SkyPlan to share data about the drivers, their performance, safety metrics, among other data.

## II.  Development of SkyHop Tech's Software

56.        SkyHop Tech's Software has been developed in phases from 2014 to the present.

57.        Indyzen was the software developer, which developed the Software throughout all of those phases. Indyzen also provided on-going maintenances services to the Software during this entire time.

58.        SkyHop Tech and Indyzen signed software development contracts for each phase of development. The development contracts were executed on or about August 5, 2014, December 30, 2017, February 11, 2019, July 15, 2019, and May 14, 2020. (The contracts are attached hereto as **Exhibits 1, 2, 3, 4,** and **5,** respectively).[1]

59.        At the times the Software was not in development, Indyzen would only maintain the Software and provide on-going bug-fixes. During these times, SkyHop Tech and Indyzen had maintenance agreements.

60.        SkyHop Tech has paid Indyzen all the amounts due under the development contracts and maintenance agreements.

61.        From 2014 to present, SkyHop Tech paid Indyzen approximately $2.6 Million to develop and maintain its Software.

62.        As the developer and party charged with the maintenance of the Software, Indyzen is in possession of all or a portion of the SkyHop Apps' source codes, the outside vendor accounts they use to function (which includes but is not limited to the AWS Accounts), the application

---

[1]        SkyHop Tech is uncertain whether there are one or two additional software development contracts between SkyHop Tech and Indyzen, which would have been signed prior to the year 2019; to the extent there are, SkyHop Tech does not have copies of same.

programming interfaces (APIs) that each SkyHop App uses, the domain names, DNS service, the

signing keys, and all corresponding passwords or passphrases necessary to continue to operate,

develop, and maintain the SkyHop Apps (collectively, SkyHop's "Digital Property").[2]

63.        Any Digital Property not in Indyzen's possession is in Narra's possession.

## III. Ownership of SkyHop Tech

64.        SkyHop Tech was incorporated in Delaware on July 18, 2014.

65.        In or around June 2014, prior to the formation of SkyHop Tech, Scotto met with

developers to discuss development of what would eventually become the Software.

66.        On or about June 10, 2014, shortly after mutual acquaintances introduced Narra

and Scotto, Narra travelled to Ft. Lauderdale, Florida to meet with Scotto and her then business

partner, Pavan Taneja.

67.        At that initial meeting, they discussed the creation of SkyHop Tech and the

prospective development of SkyPlan.

68.        Between June 16, 2014 and August 26, 2014, Narra, Scotto, and Pavan Taneja

("Taneja"), exchanged a series of emails concerning the formation of SkyHop Tech, the ownership

percentages that the initial shareholders would hold, and the development of SkyHop Tech's

Software. (A copy of emails dated June 16, 2014; June 17, 2014; and June 23, 2014 are attached

hereto as **Composite Exhibit 6**).

69.        These emails establish that Scotto, Narra, Pavan Taneja, and Noreen Young

("Young") were supposed to be the initial shareholders of SkyHop Tech:

---

[2]        For purposes of this Complaint the term "Digital Property" shall be subsumed or
incorporated in the meaning of the term "Software."

> On Jun 23, 2014, at 8:10 AM, Kristine Scotto <kscotto@skyhopglobal.com> wrote:
>
> Hi Praveen:
>
> Hope you had a great weekend!
>
> Here are our thoughts on the operating structure for the company and ownership percentage.
>
> - Kristine Scotto- CEO- 32.0%
> - Pavan Taneja- COO- 32.0%
> - Praveen Narra - CIO - 32.0%
> - Noreen Young- CMO - 4.0%
>
> Board of directors TBD in the first 180 days-
>
> Let us know your thoughts.
>
> Kristine

*See* June 23, 2014 Email, Cmp. Ex. 6.

70.     On or about June 27, 2014, Narra, Scotto, and Taneja, as the intended Co-Founders of SkyHop Tech, hired Invetnus Law to draft SkyHop Tech's organizational and corporate governance documents. (A copy of the engagement letter and accompanying email are attached hereto as **Composite Exhibit 7**).

71.     Between June 30, 2014 and July 2, 2014, Narra, Scotto, and Taneja completed a questionnaire for Inventus Law, providing information necessary to draft SkyHop Tech's organizational and corporate governance documents. (A copy of the June 30, 2014 email and the Inventus Law Questionnaire are attached hereto as **Exhibit 8**). (A copy of the completed Inventus Law Questionnaire and accompanying emails are attached hereto as **Composite Exhibit 9**).

72.     The response to the questionnaire confirms that Scotto, Narra, Taneja, and Young were all supposed to be the initial shareholders of SkyHop Tech:

d.     Proposed initial common stockholders:

| Name | Role/Title[†] | Address | Number of Shares | Option Plan? | Vesting Start Date[§] | Vesting Schedule /Acceleration |
|---|---|---|---|---|---|---|
| Kristine Scotto Bridge Holdings USA LLC | CEO/CFO | 1170 Lee Wagener Blvd Fort Lauderdale FL 33315 | 32% | | | |
| Pavan Taneja Bridge Holdings USA LLC | COO | 1170 Lee Wagener Blvd Fort Lauderdale FL. | 32% | | | |
| Praveen Narra | CTO | 5655 Silver Creek Valley Rd #334, San Jose, CA 95138 | 32% | | | |
| Noreen Young | CMO | 36 Washington st suite 250 Wellesley ma 02481 | 4% | | | |
| | | | | | | |
| **TOTAL:** | | | **100** | | | |

*See* Completed Inventus Law Questionnaire at 4, Cmp. Ex. 9.

73.     Between July 18, 2014 and August 26, 2014, while Inventus Law was drafting SkyHop Tech's organizational and corporate governance documents, the parties continued to negotiate their respective interests in SkyHop Tech. (A copy of the emails dated July 18, 2014; August 23, 24, and 26, 2014 are attached hereto as **Composite Exhibit 10**). In and around this same time, Scotto and Taneja's business relationship began to breakdown.

74.     Due to the escalating issues between Scotto and Taneja, in or about October 2014, Narra became hesitant to finalize any deal concerning his interest in SkyHop Tech. Narra delayed funding SkyHop Tech's account, and he delayed finalizing the SkyHop Tech organizational and corporate governance documents. (A copy of the email chain dated October 7-10, 2014 is attached hereto as **Exhibit 11**).

75.     On January 19, 2015, Taneja—through his company Bridge Holdings International Corp.—filed suit derivatively on behalf of Bridge Holdings USA, LLC ("Bridge USA"), claiming *inter alia* that Bridge USA owned 100% of the SkyHop Tech and SkyHop Global (hereinafter the "SkyHop Ownership Litigation").

76.     On February 6, 2015, Narra received notice of the SkyHop Ownership Litigation. (A copy of the emails dated February 6, 2015 are attached hereto as **Exhibit 12**).

77.     On February 7, 2015, Narra received a copy of the complaint filed in the SkyHop Ownership Litigation, and he referred the issue to his attorneys. (A copy of the February 7, 2015 email and the complaint are attached hereto as **Exhibit 13**). (A copy of the February 7-11, 2015 email chain is attached hereto as **Exhibit 14**).

78.     Shortly thereafter, Narra disclaimed his ownership interest in SkyHop Tech because he did not want any part of the SkyHop Ownership Litigation.

79.     On March 7, 2015, Narra sent an email to Taneja confirming that he disclaimed his interest in SkyHop Tech:



(A copy of the March 7, 2015 email chain is attached hereto as **Exhibit 15**).

80.     Narra was not a party to the SkyHop Ownership Litigation.  While Narra had the opportunity to intervene to protect any interest he may have claimed in SkyHop Tech throughout the course of that Litigation, he chose to remain on the sidelines.

81.     Young, who was also part of the initial intended ownership group, intervened in the SkyHop Ownership Litigation to protect her ownership interest in SkyHop Tech, unlike Narra.  (A copy of Young's Motion to Intervene and her Intervenor Complaint are attached hereto as **Composite Exhibit 16**).

82.     Narra refused to intervene in the SkyHop Ownership Litigation and instead renounced any interest in SkyHop Tech.

83.     Narra was deposed in connection to the SkyHop Ownership Litigation, and during the deposition he, once again, confirmed under oath he had no interest in SkyHop Tech:

> 11      Q.  Do you own a part of SkyHop Technologies,
> 12   Inc.?
> 13      A.  No.

Praveen Narra Depo. Tr., July 20, 2018, at 18:11-13.

| | |
|---|---|
| 9 | Do you contend as of right now that you have |
| 10 | an ownership in SkyHop Technologies? |
| 11 | A. I currently do not have ownership in SkyHop |
| 12 | Technologies. |

Praveen Narra Depo. Tr., July 20, 2018, at 114:9-12. (A copy of Narra's Deposition Transcript is attached hereto as **Composite Exhibit 17**).

84.　　Since Narra relinquished his ownership in SkyHop Tech, the SkyHop Ownership Litigation proceeded without Narra's involvement.

85.　　On or about March 18, 2020, the SkyHop Ownership Litigation was dismissed with prejudice pursuant to a Confidential Settlement Agreement. (A copy of March 18, 2020 Order is attached hereto as **Exhibit 18**).

86.　　In connection to that Settlement, promises were made, terms and conditions were agreed to, and monies were invested and paid in reliance on Narra's relinquishment of any and all ownership interest in SkyHop Tech.

87.　　In or shortly after March 2020, Narra learned that the SkyHop Ownership Litigation had been settled. Upon learning of the Settlement, Narra did not make any demand for an interest in SkyHop Tech.

## IV. Interference with SkyHop Tech's Software and Attempts to Extort SkyHop Tech

88.　　Almost a year after the Settlement, on or about January 9, 2021, Scotto advised Narra that, in the next few months, SkyHop Tech would be hiring in-house developers, who would continue to develop and maintain the Software. That meant SkyHop Tech's on-going relationship with Indyzen would be terminating.

89.　　During the call, Scotto advised Narra that she wanted to come up with a plan to transfer the possession and control of the Software to SkyHop Tech.  Narra immediately refused,

and said he would not turn over the software unless he was paid for *his* alleged shares of SkyHop Tech.

90.     On January 11, 2021, Narra sent an email to Scotto demanding payment of over $1.1 Million in exchange for turning over the Software to SkyHop Tech:



(A copy of the January 11, 2021 email is attached hereto as **Exhibit 19).**

91.     The demand for payment of $1.1 million was random and arbitrary, not tied to development, maintenance, or any other services provided to SkyHop Tech.  No invoice for that amount was ever provide.

92.     Narra's attempt to hold the Software hostage for $1.1 million dollars to coerce any of the Plaintiffs to pay him money is unauthorized use of the computer information, in particular the unauthorized retentions of the AWS Production Server Account, and other portions of the Software or Digital Property in possession.

93.      On February 1, 2021, Robert Milks—an agent of Indyzen—reinforced that the payment of the **$1.1 million had to be paid to Narra, individually** *before* Indyzen was to return the Software:



(A copy of the February 1, 2021 email is attached hereto as **Exhibit 20).**

94.      On February 6, 2021, Narra sent an email stating that, by February 10th, Scotto should transfer a 32% interest in SkyHop Tech to his name, individually, if they could not agree to terms concerning the $1.1 million demand that Narra had made on January 11, 2021. (A copy of the February 6, 2021 email is attached hereto as **Exhibit 21).**

95.      On February 9, 2021, SkyHop Tech's counsel sent a demand letter to Narra, giving him until March 1, 2021, to return the Software. (A copy of the February 9, 2021 demand letter is attached hereto as **Exhibit 22).**

96.      Despite SkyHop Tech's demand for return of its Software, Narra and/or Indyzen have not transferred possession of the Software to SkyHop Tech.

97.     Instead, anticipating an action for the return of the Software, on March 12, 2021, eleven days after SkyHop Tech demanded that the Software be returned, Indyzen filed a Demand for Arbitration (the "Demand"), against the Plaintiffs. (A copy of the Demand is attached hereto as **Exhibit 23**).

98.     Based on the emails sent on January 11, 2021 (Ex. 19), February 1, 2021 (Ex. 20), and February 6, 2021 (Ex. 21), Narra further clarified that he was withholding, and directing Indyzen to withhold, the Software because SkyHop Tech had to pay *him* for *his* purported shares in SkyHop Tech. This is not a valid justification for withholding the Software.

99.     Based on the Demand, it is deduced that Indyzen is withholding the Software because it believes that SkyHop Tech failed to pay full price for it. Indyzen maintains SkyHop Tech received the Software at a deep discount due to the fact that Narra was initially supposed to own a percentage of SkyHop Tech; thus, SkyHop Tech failed to pay full price for it. Indyzen's rationale, however, is flawed and does not justify withholding the Software because SkyHop Tech paid all amounts due for the Software.

100.    Currently, SkyHop Tech is able to operate the Software but it is not able to develop or maintain the Software in-house, and it is unable to reproduce the Software or prepare derivatives of the Software.

101.    All conditions precedent to bringing this action have been performed, waived, or otherwise excused.

102.    Plaintiffs hired undersigned counsel and they are required to pay the undersigned reasonable attorneys' fees in connection to this action.

**Count I**
**Computer Fraud and Abuse Act (18 U.S.C. §1030(a)(7)(A) or §1030(a)(7)(C))**
(SkyHop Tech against Defendants)

103.     SkyHop Tech realleges and incorporates by reference herein the allegations in paragraphs 1 through 102.

104.     On January 11, 2021, Narra sent an email to SkyHop Tech with the intent to extort money from SkyHop Tech.

105.     On February 1, 2021, Narra caused Indyzen to send an email to SkyHop Tech with the intent to extort money from SkyHop Tech.

106.     Narra refused to allow Indyzen to transfer possession of the Software to SkyHop Tech until and unless SkyHop Tech paid him $1.1 Million.

107.     Narra had no justification for making such demand for payment, he had no justification for withholding the Software, and had no justification for causing Indyzen to do same.

108.     Narra used his, and Indyzen's, continued unauthorized possession of the Software, to facilitate his extortion of $1.1 Million.

109.     SkyHop Tech demanded that Narra and Indyzen return the Software within his exclusive possession on or before March 1, 2021. Narra and Indyzen did not transfer same, and continue to withhold the AWS Production Server Account passwords, and other portions of the Software or Digital Property in its possession.

110.     As a result of Narra and or Indyzen's misconduct, SkyHop Tech suffered, and will continue to suffer, a damage as it has not had complete or sole access to its Software, data, and information, which includes but is not limited to the source code, passwords and other Digital Property.

111.     As a result of Narra and or Indyzen's misconduct, SkyHop Tech suffered and will continue to suffer losses that far exceed $5,000.00, which include but are not limited to (a) reasonable attorneys' fees as a result of responding to Narra and Indyzen's offense, (b) computer consultants' fees as a result of responding to Narra and Indyzen's offense, (c) software developer or consultant fees for conducting a damage assessment of the Software once it comes into possession of same, (d) software developer or consultant fees for conducting a damage assessment of the Software once it comes into possession of same, (e) loss of opportunity, and (f) other consequential damages such as loss of opportunity to collect additional data and add value to the Software and SkyHop Tech.

WHEREFORE, Plaintiff SkyHop Tech demands final judgment in its favor, and against Narra and Indyzen, for possession and control of SkyHop Tech's Software, temporary and permanent injunctive relief as set forth in the common prayer for relief below, and for compensatory damages together with interest, attorneys' fees, costs and any other relief this Court deems just and proper.

## Count II
## Computer Fraud and Abuse Act (18 U.S.C. §1030(a)(2)(C))
(SkyHop Tech against Defendants)

112.     SkyHop Tech realleges and incorporates by reference herein the allegations in paragraphs 1 through 102.

113.     On March 1, 2021, Narra intentionally withheld the AWS Staging Server Account passwords, and other portions of the Software or Digital Property within his exclusive possession. Narra also caused Indyzen to withhold the AWS Production Server Account passwords, and other portions of the Software or Digital Property in its possession.

114.     As of March 2, 2021, Narra and Indyzen were no longer authorized to have exclusive possession and control of SkyHop Tech's Software or Digital Property.

115.     Defendants' continued sole possession and control of SkyHop Tech's Software was entirely without authority; alternatively, Defendants exceeded their authority by remaining in sole possession and control of SkyHop Tech's Software or Digital Property.

116.     From March 2, 2021 to present, Narra obtained information, or alternatively caused Indyzen to obtain information, from SkyHop Tech's Software, which is located in its password protected servers and is used in or otherwise affects interstate commerce.

117.     As a result of Narra and or Indyzen's misconduct, SkyHop Tech suffered, and will continue to suffer, a damage as it has not had complete or sole access to its Software, data, and information, which includes but is not limited to the source code, passwords and other Digital Property.

118.     As a result of Narra and or Indyzen's misconduct, SkyHop Tech suffered and will continue to suffer losses that far exceed $5,000.00, which include but are not limited to (a) reasonable attorneys' fees as a result of responding to Narra and Indyzen's offense, (b) computer consultants' fees as a result of responding to Narra and Indyzen's offense, (c) software developer or consultant fees for conducting a damage assessment of the Software once it comes into possession of same, (d) software developer or consultant fees for conducting a damage assessment of the Software once it comes into possession of same, (e) loss of opportunity, and (f) other consequential damages such as loss of opportunity to collect additional data and add value to the Software and SkyHop Tech.

WHEREFORE, Plaintiff SkyHop Tech demands final judgment in its favor, and against Narra and Indyzen, for possession and control of SkyHop Tech's Software, temporary and

permanent injunctive relief as set forth in the common prayer for relief below, and for compensatory damages together with interest, attorneys' fees, costs and any other relief this Court deems just and proper.

### Count III
### Computer Fraud and Abuse Act (18 U.S.C. §1030(a)(5)(C))
(SkyHop Tech against Defendants)

119.    SkyHop Tech realleges and incorporates by reference herein the allegations in paragraphs 1 through 102.

120.    On March 1, 2021, Narra intentionally withheld the AWS Staging Server Account passwords, and other portions of the Software or Digital Property within his exclusive possession. Narra also caused Indyzen to withhold the AWS Production Server Account passwords, and other portions of the Software or Digital Property in its possession.

121.    As of March 2, 2021, Narra and Indyzen were no longer authorized to have the exclusive possession or control of the AWS Production Server Account, the AWS Staging Server Account and other components of SkyHop Tech's Software or Digital Property.

122.    Defendants' continued sole possession and control of the AWS Production Server Account, the AWS Staging Server Account and other components of SkyHop Tech's Software or Digital Property was entirely without authority.

123.    Through the continued sole possession and control of SkyHop Tech's Software from March 2, 2021 to present, Narra intentionally accessed, and or caused Indyzen to intentionally access, the Software which is located in its password protected servers and is used in or otherwise affects interstate commerce.

124.    As a result of Narra and or Indyzen's misconduct, SkyHop Tech suffered, and will continue to suffer, a damage as it has not had complete or sole access to its Software, data, and

information, which includes but is not limited to the source code, passwords and other Digital Property.

125.     As a result of Narra and or Indyzen's misconduct, SkyHop Tech suffered and will continue to suffer losses that far exceed $5,000.00, which include but are not limited to (a) reasonable attorneys' fees as a result of responding to Narra and Indyzen's offense, (b) computer consultants' fees as a result of responding to Narra and Indyzen's offense, (c) software developer or consultant fees for conducting a damage assessment of the Software once it comes into possession of same, (d) software developer or consultant fees for conducting a damage assessment of the Software once it comes into possession of same, (e) loss of opportunity, and (f) other consequential damages such as loss of opportunity to collect additional data and add value to the Software and SkyHop Tech.

WHEREFORE, Plaintiff SkyHop Tech demands final judgment in its favor, and against Narra and Indyzen, for possession and control of SkyHop Tech's Software, temporary and permanent injunctive relief as set forth in the common prayer for relief below, and for compensatory damages together with interest, attorneys' fees, costs and any other relief this Court deems just and proper.

**Count IV**
**Florida's Computer Abuse and Data Recovery Act (Fla. Stat. § 668.803(1), (2), or (3))**
(SkyHop Tech against all Defendants)

126.     SkyHop Tech realleges and incorporates by reference herein the allegations in paragraphs 1 through 102.

127.     On March 1, 2021, Narra intentionally withheld the AWS Staging Server Account passwords, and other portions of the Software or Digital Property within his exclusive possession.

Narra also caused Indyzen to withhold the AWS Production Server Account passwords, and other portions of the Software or Digital Property in its possession.

128.     As of March 2, 2021, Defendants were no longer authorized to have exclusive possession and control of SkyHop Tech's Software or Digital Property.

129.     Defendants knew that their continued sole possession and control of SkyHop Tech's Software was not authorized.

130.     Through the continued sole possession and control of SkyHop Tech's Software from March 2, 2021 to present Narra either (a) intentionally accessed, and or caused Indyzen to intentionally access, the Software that is located in its password protected servers and is used in or otherwise affects interstate commerce, (b) transmitted a program, code, or command, or caused Indyzen to transmit a program, code, or command, to the Software that is located in its password protected servers without authorization, or (c) trafficked in, or caused Indyzen to traffic in, a technological access barrier through which access to the Software may be obtained without authorization.

131.     As a result of Narra and or Indyzen's misconduct, SkyHop Tech suffered, and will continue to suffer, a damage as it has not had complete or sole access to its Software, data, and information, which includes but is not limited to the source code, passwords and other Digital Property.

132.     As a result of Narra and or Indyzen's misconduct, SkyHop Tech suffered and will continue to suffer losses that far exceed $5,000.00, which include but are not limited to (a) reasonable attorneys' fees as a result of responding to Narra and Indyzen's offense, (b) computer consultants' fees as a result of responding to Narra and Indyzen's offense, (c) software developer or consultant fees for conducting a damage assessment of the Software once it comes into

possession of same, (d) software developer or consultant fees for conducting a damage assessment of the Software once it comes into possession of same, (e) loss of opportunity, and (f) other consequential damages such as loss of opportunity to collect additional data and add value to the Software and SkyHop Tech.

WHEREFORE, Plaintiff SkyHop Tech demands final judgment in its favor, and against Narra and Indyzen, for possession and control of SkyHop Tech's Software, temporary and permanent injunctive relief as set forth in the common prayer for relief below, and for actual damages together with interest, attorneys' fees, costs and any other relief this Court deems just and proper.

## Count V
## Declaratory Judgment - Arbitrability
(SkyHop Global and Scotto against Indyzen)

133.     Plaintiffs SkyHop Global and Scotto reallege and incorporate by reference herein the allegations in paragraphs 1 through 102.

134.     On March 12, 2021, Indyzen filed the Demand against the Plaintiffs.

135.     The claims Indyzen is attempting bring in the Arbitration are set forth as follows:

> Brief Description of the Dispute:
>
> Intentional Misrepresentation; Breach of Oral Contract; Breach of Covenant of Good Faith and Fair Dealing; Breach of Fiduciary Duty; Promissory Estoppel; Unjust Enrichment; Damages, Declaratory and Injunctive Relief Sought.  Inter alia, Respondent falsely represented she would give Claimant 32% stake in company, and in return received valuable services at deep discount under this contract and related contracts. ⊞

Arbitration Demand, Ex. 23.

136.     Indyzen has not provided any other description of its claims, nor has it set forth any additional allegations in support thereof.

137.     SkyHop Global is not a party to any contract with Indyzen. *See* Development Contracts, Exs. 1, 2, 3, 4, and 5.

138.     SkyHop Global is not a shareholder of SkyHop Tech.

139.      SkyHop Global's only relationship to the dispute between SkyHop Tech and the Indyzen is that it holds a license to use the Software.

140.      Scotto, in her individual capacity, is not a party to any contract with Indyzen. *See* Development Contracts, Exs. 1, 2, 3, 4, and 5.  Scotto's only relationship to the dispute between SkyHop Tech and Indyzen is in her capacity as a President of SkyHop Tech.

141.      Indyzen relies on the 2014 Development Contract, and more particularly the arbitration provision contained therein, as the arbitration agreement that gives it the right to arbitrate the claims set forth therein. *See* 2014 Development Contract attached to Arbitration Demand, at Sec. 12, Ex. 23.

142.      The 2014 Development Contract is between Skyhop Tech and Indyzen, it provides in relevant part:

| | |
|---|---|
| This Software Development and License Agreement (the "Agreement") is effective July 28, 2014. | |
| **BETWEEN:** | **AppDevelopment.com, Inc** (the "Company"), a company organized and existing under the laws of the State of California, with its main business address at: 2033 Gateway Pl San Jose, CA 95110 |
| **AND:** | **Skyhop Technologies, Inc** (the "Customer"), with main address at: **1170 Lee Wagener Blvd Suite 205 Fort Lauderdale Florida 33315** |

*See* 2014 Development Contract attached to Arbitration Demand, at Page 1 of 9, Ex. 23. AppDevelopment.com, Inc., a fictitious name of Indyzen.

143.      There is no provision in the 2014 Development Contract making it applicable to any party other than specifically the Company (Indyzen) or the Customer (SkyHop Tech).  *Id.*

144.      In the 2014 Development Contract between SkyHop Tech and Indyzen there is an arbitration provision contained at section 12.  This provision reads as follows:

> Customer shall provide Company, detailed information regarding any dispute, and shall agree to cooperate with Company in investigating of disputed matters. Except for any dispute arising out of payments due to Company, **any dispute or disagreement arising between the Company and the Customer** which is not resolved to the mutual satisfaction of the Company and the Customer within

fifteen (15) days (or such longer period as may be mutually agreed upon) from the date that either Party gives written notice that such dispute or disagreement exists, shall be referred to arbitration in San Jose, CA before one arbitrator in accordance with the Commercial Arbitration Rules (the "Arbitration Rules") of the American Arbitration Association (the "AAA"), in effect on the date that such written notice is given. Each Party shall bear its own cost of preparing for and presenting its case; and the cost of arbitration, including the fees, and expenses of the arbitrator, will be shared equally by the Parties. Customer waives any and all rights it may have to a jury trial in connection with any proceedings concerning this agreement.

2014 Development Contract attached to Arbitration Demand, at Sec. 12, Ex. 23 (emphasis added).

145.     Plaintiff Scotto and Plaintiff SkyHop Global never agreed to arbitrate any claims with Indyzen, and much less the claims set forth in the Arbitration Demand and, as such, are not obligated to participate in an arbitration with the Defendants.

146.     The claims described in Indyzen's Demand further indicate that they are not arbitrable against either SkyHop Global or Scotto. For example, one of the described claims provides that "Respondent falsely represented **she** [presumptively Scotto] would give Claimant [Indyzen] 32% stake in company [presumptively SkyHop Tech], and in return received valuable services at deep discount under this contract and related contracts." Arbitration Demand, Ex. 23. (Emphasis added). This statement is inaccurate because Scotto never represented that *Indyzen* would hold a 32% stake in SkyHop Tech; rather, as reflected in the emails *supra* the initial intent was for Narra, individually, to hold a 32% share of SkyHop Tech, which interest was later unequivocally disclaimed by Narra.

147.     Based on the January 11, 2021, February 1, 2021, and February 6, 2021 emails, the dispute is one concerning the ownership interest in SkyHop Tech because those emails make clear that Narra's demand for $1.1 million was for his purported ownership interest in SkyHop Tech.  A dispute concerning the ownership of SkyHop Tech is necessarily between Narra, individually, and

SkyHop Tech's shareholders—Scotto and Young.  Such dispute is not subject to arbitration because Scotto and Narra never agreed to arbitrate claims concerning the ownership SkyHop Tech.

148.     There is an actual case or controversy between Indyzen and Plaintiffs Scotto and SkyHop Global regarding the arbitrability of Indyzen's claims and Plaintiffs' obligations to participate in an arbitration.

149.     Scotto and SkyHop Global will suffer injury in the future if they are required to participate in an arbitration for which they did not agree to participate.

150.     There is a substantial continuing controversy between Indyzen and Plaintiffs Scotto and SkyHop Global.

151.     The continuing controversy is not conjectural, hypothetical, or contingent; it is real and immediate, and creates a definite, rather than speculative threat of future injury to Plaintiffs Scotto and SkyHop Global.

WHEREFORE, Plaintiffs Scotto and SkyHop Global seek a declaration that the arbitration provision in the 2014 Development Contract is unenforceable as it relates to them. Further, Plaintiffs' request this Court issue a preliminary permanent injunction prohibiting the Arbitration against Scotto and SkyHop Global.

**Count VI**
**Declaratory Judgment - Arbitrability**
(SkyHop Tech against Indyzen)

152.     SkyHop Tech realleges and incorporate by reference herein the allegations in paragraphs 1 through 102.

153.     On March 12, 2021, Indyzen filed the Demand against the Plaintiffs.

154.     The claims Indyzen is attempting bring in the Arbitration are set forth as follows:

> **Brief Description of the Dispute:**
>
> Intentional Misrepresentation; Breach of Oral Contract; Breach of Covenant of Good Faith and Fair Dealing; Breach of Fiduciary Duty; Promissory Estoppel; Unjust Enrichment; Damages, Declaratory and Injunctive Relief Sought.  Inter alia, Respondent falsely represented she would give Claimant 32% stake in company, and in return received valuable services at deep discount under this contract and related contracts. ■

Arbitration Demand, Ex. 23.

155.    Indyzen has not provided any other description of its claims, nor has it set forth any additional allegations in support thereof.

156.    Indyzen relies on the 2014 Development Contract, and more particularly the arbitration provision contained therein, as the arbitration agreement that gives it the right to arbitrate the claims set forth therein. *See* 2014 Development Contract attached to Arbitration Demand, at Sec. 12, Ex. 23.

157.    The 2014 Development Contract is between Skyhop Tech and Indyzen, it provides in relevant part:

> This Software Development and License Agreement (the "Agreement") is effective July 28, 2014.
>
> **BETWEEN:**     **AppDevelopment.com, Inc** (the "Company"), a company organized and existing under the laws of the State of California, with its main business address at: 2033 Gateway Pl San Jose, CA 95110
>
> **AND:**     **Skyhop Technologies, Inc** (the "Customer"), with main address at: **1170 Lee Wagener Blvd Suite 205 Fort Lauderdale Florida 33315**

See 2014 Development Contract attached to Arbitration Demand, at Page 1 of 9, Ex. 23. AppDevelopment.com, Inc., a fictitious name of Indyzen.

158.    In the 2014 Development Contract between SkyHop Tech and Indyzen there is an arbitration provision contained at section 12.  This provision reads as follows:

> Customer shall provide Company, detailed information regarding any dispute, and shall agree to cooperate with Company in investigating of disputed matters. **Except for any dispute arising out of payments due to Company**, any dispute or disagreement arising between the Company and the Customer which is not resolved to the mutual satisfaction of the Company and the Customer within fifteen (15) days (or such longer period as may be mutually agreed upon) from the date that either Party gives written notice that such dispute or disagreement exists, shall be referred to arbitration in San Jose, CA before one

arbitrator in accordance with the Commercial Arbitration Rules (the "Arbitration Rules") of the American Arbitration Association (the "AAA"), in effect on the date that such written notice is given. Each Party shall bear its own cost of preparing for and presenting its case; and the cost of arbitration, including the fees, and expenses of the arbitrator, will be shared equally by the Parties. Customer waives any and all rights it may have to a jury trial in connection with any proceedings concerning this agreement.

2014 Development Contract attached to Arbitration Demand, at Sec. 12, Ex. 23 (emphasis added).

159.     Disputes concerning payment of the Software are specifically exempted from Arbitration. *See* 2014 Development Contract attached to Arbitration Demand, at Sec. 12, Ex. 23.

160.     The dispute, as identified by Indyzen in its Demand, is one of payment that is outside the scope of the arbitration provision.  Indyzen maintains that it is justified in withholding the Software because it believes that SkyHop Tech failed to pay full price for it. According to Indyzen, it developed the Software "at deep discount" due to the fact that Narra was initially supposed to own a percentage of SkyHop Tech; thus, SkyHop Tech failed to pay full price for it. Indyzen's rationale however is flawed and does not justify withholding the Software because (a) Narra's purported ownership of SkyHop Tech did not form part of the "payment" for the Software, (b) SkyHop Tech paid all amounts due for the Software, (c) whether Narra, individually, was given an ownership interest of SkyHop Tech is not a basis to withhold the Software from SkyHop Tech, and (d) Narra voluntarily waived any claim to ownership and made no demand for payment over the entire course of the SkyHop Ownership Litigation.

161.     Alternatively, to the extent that the dispute concerns the ownership of SkyHop Tech, that does not constitute an arbitrable dispute between SkyHop Tech and Indyzen because such a dispute is between Narra, individually, and SkyHop Tech's shareholders—Scotto and Young.

162.     There is an actual case or controversy between SkyHop Tech and Indyzen regarding the arbitrability of Indyzen's claims and SkyHop Tech's obligations to participate in an Arbitration.

163.     SkyHop Tech will suffer injury in the future if they are required to participate in an arbitration for which it did not agree to participate.

164.     There is a substantial continuing controversy between SkyHop Tech and Indyzen.

165.     The continuing controversy is not conjectural, hypothetical, or contingent; it is real and immediate, and creates a definite, rather than speculative threat of future injury to SkyHop Tech.

WHEREFORE, SkyHop Tech seeks a declaration that the arbitration provision in the 2014 Development Contract is unenforceable as it relates to the claims set forth in the Arbitration Demand. Further, SkyHop Tech requests this Court issue a preliminary permanent injunction prohibiting the Arbitration against SkyHop Tech.

### Prayer for Relief Common to Counts I - IV

**WHEREFORE**, in addition to above-requested relief, SkyHop Tech requests this Court enter judgment against Defendants, setting forth as follows:

1.   Requiring Defendants to transfer to SkyHop Tech the sole possession and control of SkyHop Tech's Software and Digital Property, which includes but is not limited to:

     a.   the source code,

     b.   all data collected, produced, or used by the Software, including but not limited to the production data, staging data, or quality assurance data,

     c.   domain names,

     d.   DNS services,

e.   AWS cloud servers account hosting the Software (which will include access to the root AWS user and the SSH access to root user or user with sudo/su privileges),

f.   signing keys,

g.   any passwords, passphrases and other login information to sign apps or used in connection to SkyHop Tech's Software,

h.   any passwords, passphrases and other login information to sign-in to third-party vendor accounts used by SkyHop Tech's Software,

i.   the Apple Developer account used for the IOS apps,

j.   Google Play Developer Console account used for the android accounts,

k.   Firebase Cloud Messaging account,

l.   any other external services or application programming interfaces (APIs) used by the production web application or for development (this includes both management access and API access where applicable), these API's include but are not limited to: Document conversion service, error tracking, websocket service, and Google Cloud Platform account which provides maps/directions API,

m.   any other account with outside vendors or third parties and/or APIs, which are used for the Software to function, and

n.   any other information or account necessary to ensure the Software continues to function in an uninterrupted manner and can continue to be developed by SkyHop Tech's internal developers.

2.   Entering a preliminary and permanent injunction against Defendants, their employees, agents, successors and assigns, and all those in active concert and participation with

Defendants, and each of them who receives notice directly or otherwise of such injunctions, ordering as follows:

    a.   For as long as Defendants are in possession of the SkyHop Tech's Software, Defendants shall:

        i.   ensure that the Software continues to function in an uninterrupted manner,

        ii.   respond in a timely fashion[3] to any bugs or issues with the Software that may arise,

        iii.   make available a maintenance personnel via email, phone, or videoconference to customer to address any bugs or issues with the Software, and

        iv.   and can continue to be developed by SkyHop Tech's internal developers.

    b.   Defendants shall transfer possession and control of the Software and Digital Property to SkyHop Tech in such a manner so as to ensure that the Software will continue to function in an uninterrupted manner, and that SkyHop Tech's internal developers can continue to develop the Software,

---

[3] For bugs or issues causing an emergency situation, in which the Software is rendered inoperable or degrades substantially such that there is a severe impact on use, produces incorrect results on Core functionality, or fails catastrophically, a "timely" response time shall be (i) within thirty-minutes for Defendants to provide a response by a member of its staff and begin to diagnose and to correct the problem, (ii) within 1 hour for Defendants to deliver an acceptable work-around that permits the Software to be used in a way that ensures continuity of ground transportation services to Airlines, and (iii) under any and all circumstances, the Software must be functioning properly within 4 hours. For all other bugs or issues where the Software is usable but does not operate in the most convenient manner, and the user suffers little or no significant impact, a "timely" response time shall be (i) within 24 hours to provide a response by a member of Defendants' staff, (ii) within 48 hours to begin to diagnose and to correct the problem, and (iii) under any and all circumstances, the Software must be functioning properly within 2 weeks.

c.   Defendants shall relinquish all access or control to the Software and Digital Property,

d.   Defendants shall not reproduce, commercialize, or exploit the Software, and

e.   Within thirty (30) days after entry of such injunction order or judgment, provide a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the above.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil procedure, Plaintiffs respectfully requests a trial by jury of all issues properly triable by jury.

Date: April 12, 2021

Respectfully Submitted:

BELL ROSQUETE REYES ESTEBAN, PLLC
Attorneys for Plaintiff
999 Ponce De Leon Blvd., Suite 1120 PH
Miami, Florida 33134
Telephone: (305) 570-1610
Facsimile: (305) 570-1599
aesteban@brresq.com
jreyes@brresq.com
arosquete@brresq.com

By: */s/ Alexander Esteban*
Alexander Esteban, Esq.
Florida Bar No. 107491
Javier A. Reyes, Esq.
Florida Bar No. 688487
Armando Rosquete, Esq.
Florida Bar No. 648434

*and*

DORTA & ORTEGA, PA
Attorneys for Plaintiff

3860 SW 8th Street, PH
Coral Gables, FL 33134
Telephone: (305) 461-5454
Facsimile: (305) 461-5226

By: /s/_*Omar Ortega*___
Omar Ortega, Esq.
Florida Bar No. 0095117
Rey Dorta, Esq.
Florida Bar No. 0084920
Rosdaisy Rodriguez, Esq.
Florida Bar No. 0112710