UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60799-CIV-SINGHAL/VALLE

SKYHOP TECHNOLOGIES, INC.,
SKYHOP GLOBAL, LLC, and
KRISTINE SCOTTO,

      Plaintiffs,

v.

PRAVEEN NARRA and INDYZEN, INC.
d/b/a AppDevelopment.com, Inc.
d/b/a Tech.US, Inc.,

      Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, Improper Venue (DE [50]).  Plaintiffs have filed a Response in Opposition (DE [53]), and Defendants have filed a Reply (DE [54]).  As discussed below, the Court grants Defendants' Motion to Dismiss for lack of personal jurisdiction.

## I.  BACKGROUND

This action involves the ownership of software.  According to the First Amended Complaint, Plaintiff SkyHop Technologies, Inc. ("SkyHop Tech") owns certain proprietary software for Apple and Android phones: SkyPlan, SkyHop Crew's iOS application and Android application, and SkyHop Driver's iOS application and Android application (collectively, "the Software").  First Am. Compl. ¶ 1 (DE [46]).  SkyHop Tech licenses the Software to Plaintiff SkyHop Global, LLC, a company that provides ground transportation services to pilots and flight attendants at airports throughout the United States to ensure

they arrive at their destinations on time.  *Id.* ¶¶ 2–3.  SkyHop Global has approximately eighty contracts with fifteen airlines.  *Id.* ¶ 4.

### A. Factual Allegations

SkyHop Plan is a web-based program that communicates with and supports the SkyHop Crew and Driver apps—which are used only by SkyHop Global's drivers and airline crews—by collecting and controlling flight and driver data in real time.  *See id.* ¶¶ 25–35, 44–46, 50–52.  SkyPlan is housed in both a production server and staging server, which are hosted by Amazon Web Services.  *Id.* ¶¶ 36–38.  SkyHop Tech pays for the Amazon accounts, but one account is in Defendant Praveen Narra's individual name and the other is in Defendant Indyzen Inc.'s name.  *Id.* ¶¶ 38–40.[1]  SkyHop Tech does not have the passwords for the Amazon accounts, and Narra and Indyzen have refused to comply with Plaintiffs' demands for return of the passwords.  *Id.* ¶¶ 41–43.

Since 2014, SkyHop Tech has paid Defendant Indyzen approximately $2.6 million to develop and maintain the Software during various phases under separate development contracts.  *See id.* ¶¶ 5, 56–58.  During the periods when the Software was not in development, Indyzen would only maintain the Software and provide bug fixes under maintenance agreements.  *Id.* ¶ 59.  SkyHop Tech has paid Indyzen all the amounts due under the development and maintenance contracts.  *Id.* ¶ 60.

Sometime in 2015, Narra disclaimed any ownership interest he had in SkyHop Tech because he did not want to be involved with recently initiated litigation over SkyHop Tech and SkyHop Global's ownership.  *See id.* ¶¶ 75–84.  In March 2020, that lawsuit was ultimately resolved through a confidential settlement agreement and was dismissed

---

[1] Narra is Indyzen's CEO and founder.  (DE [50-1] ¶ 2); *see also* First Am. Compl. ¶ 18 (DE [46]).

with prejudice "in reliance on Narra's relinquishment of any and all ownership interest in SkyHop Tech."  *Id.* ¶¶ 85–86.

In January 2021, Plaintiff Kristine Scotto—SkyHop Tech's president and SkyHop Global's CEO—advised Narra that Scotto was planning to hire in-house developers to take over the Software's development and maintenance.  *Id.* ¶¶ 6, 88.  But Narra refused to transfer possession and control of the Software to SkyHop Tech, instead demanding $1.1 million, claiming he was entitled to his purported 32% interest in SkyHop Tech.  *Id.* ¶¶ 6, 88, 90, 94, 98, 99.  Plaintiffs allege that Narra and Indyzen are both unlawfully withholding portions of the Software from SkyHop Tech.  *See id.* ¶¶ 7, 95.  Although SkyHop Tech is currently able to operate the Software, it is unable to develop or maintain it in house and is unable to reproduce it.  *Id.* ¶ 100.

In March 2021, eleven days after SkyHop Tech sent a letter to Narra demanding return of the Software, Indyzen filed a demand for arbitration against Plaintiffs and then filed an Amended Demand for Arbitration three months later.  *Id.* ¶¶ 96–97; *see also* (DE [46-1]).  Plaintiffs allege that Narra was improperly added as a claimant in the Amended Demand and that he had no authorization to file arbitral claims.  First Am. Compl. ¶ 97 (DE [46]).

### B. Jurisdictional Allegations

According to the First Amended Complaint, Narra resides in California, and Indyzen is a California corporation.  *Id.* ¶¶ 18–19.  SkyHop Tech is incorporated in Delaware and has its "headquarters" in Florida.  *Id.* ¶ 15.  Plaintiffs allege that Narra traveled to Florida in June 2014 to meet with Scotto and her then-business partner to discuss the creation of SkyHop Tech and the development of SkyPlan.  *Id.* ¶¶ 66–67.  In

2014, Narra also sent several emails to Scotto, who resides in Florida, to discuss SkyHop Tech. *Id.* ¶ 68. In January and February 2021, Narra again emailed Scotto to demand that SkyHop Tech pay more than $1.1 million in exchange for the Software. *Id.* ¶¶ 90, 94. Also in February 2021, another one of Indyzen's agents emailed Scotto again about the money. *Id.* ¶ 93. Plaintiffs allege that the Court has general personal jurisdiction over Defendants under section 48.193(2), Florida Statutes. *Id.* ¶ 13. Alternatively, Plaintiffs allege that the Court has specific personal jurisdiction under sections 48.193(1)(a)1., 2., and 6., Florida Statutes. *Id.*

Defendants have submitted their own evidence attached to their Motion to Dismiss to refute Plaintiffs' jurisdictional allegations. According to Narra's affidavit, Indyzen is a California corporation, and Narra is domiciled in California. (DE [50-1] ¶¶ 3, 21). The Software involved in this action was exclusively developed, built, and maintained in California and India, and it is hosted on third-party servers located in Virginia. *Id.* ¶¶ 4, 15–16. Indyzen and Narra are neither registered to do business in Florida nor maintain a registered agent in Florida. *Id.* ¶¶ 6, 22. Indyzen and Narra do not: own any tangible or intangible assets in Florida; maintain a bank account, phone number, mailbox, office, physical address, or P.O. box in Florida; specifically advertise or market in Florida; or have any employees, agents, officers, or directors in Florida. *Id.* ¶¶ 7–12, 14, 23–28. Indyzen does not own or rent "chattel or real personal property" in Florida, and Narra does not hold a professional license in Florida. *Id.* ¶¶ 14, 29.

Indyzen, Tech.us, and AppDevelopment.com have websites that are purely informational and do not specifically target Florida users. *Id.* ¶ 13. Indyzen's sole contract with an entity in Florida is with SkyHop Tech. *Id.* ¶¶ 19, 34; *see also* (DE [50-1], at 13–

14) ("Acceptance Testing Approval" contract with Scotto).  Narra has not traveled to Florida since 2019.  (DE [50-1] ¶ 32).  He has met with Scotto only three times in Florida in 2014, 2016, and 2018.  *Id.*  All the work he and Indyzen perform on the Software has taken place outside of Florida, and none of the Indyzen employees or contractors who worked on the Software are in Florida.  *Id.* ¶ 34.

The First Amended Complaint alleges six claims: (I)–(III) violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a); (IV) violations of Florida's Computer Abuse and Data Recovery Act ("CADRA"), Fla. Stat. § 668.803; and (V)–(VI) declaratory judgments that Plaintiffs are not required to arbitrate their claims.[2] Defendants now move to dismiss the First Amended Complaint for lack of personal jurisdiction or, alternatively, for improper venue.

## II.    LEGAL STANDARD

To survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "a plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (citing *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010)).  "If the defendant is able to refute personal jurisdiction by sustaining its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own." *Id.* (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)).

---

[2] Plaintiffs have also filed a separate Motion for Preliminary Injunction (DE [57]).  According to Plaintiffs, a final arbitration hearing was scheduled for November 2021, but the arbitration proceeding is currently stayed pending this Court's resolution of the arbitrability issue.  (DE [60] ¶ 3).

"[W]hen the plaintiff offers no competent evidence to the contrary, 'a district court may find that the defendant's unrebutted denials [are] sufficient to negate plaintiff's jurisdictional allegations.'" *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1334 (S.D. Fla. 2016) (alteration in original) (quoting *Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013)).

## III.   DISCUSSION

A court engages in a two-step process to determine whether personal jurisdiction exists over a nonresident defendant: "[T]he exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (footnote omitted) (citing *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005)). "[T]o subject a defendant to an in personam judgment when he is not present within the territory of the forum, due process requires that the defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 500 (Fla. 1989) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). "[T]he test is whether the defendant's conduct in connection with the forum state is 'such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)).

### A.  General Jurisdiction

Plaintiffs first allege that the Court has general jurisdiction under Florida's long-arm statute, which provides: "A defendant who is engaged in substantial and not isolated

activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2) (2020). To satisfy due process under the Constitution, a "court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporation's place of incorporation and its principal place of business are generally the only "limited set of affiliations with a forum [that] will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 137 (citation omitted).

Here, it is undisputed that Indyzen is incorporated in California and has its principal place of business in California. Similarly, Narra is domiciled in California. Both parties admit that Narra met with Scotto once in Florida in 2014. Plaintiffs contend that this meeting—during which Narra and Scotto discussed the creation of SkyHop Tech and the development of SkyPlan—ultimately led to Narra's agreement in June 2014 to own 32% of SkyHop Tech, a corporation that was subsequently incorporated in Delaware and "headquartered" in Florida. *See* (DE [10-1] ¶¶ 39–43). During that time, Narra and Scotto also exchanged several emails about their business plans.

The Court does not find that these contacts constitute "substantial and not isolated activity" within Florida that would subject Defendants to general personal jurisdiction here. One meeting in Florida in 2014—even if to discuss the prospective creation of the very Software at issue—is the quintessential definition of "isolated" activity. *See Consol. Dev.*

*Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) ("[W]here a foreign corporation does not engage in general business in the forum, simply negotiating a contract there will not support general in personam jurisdiction." (citing *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 992 (11th Cir. 1986))).

Nor do the emails between Narra and Scotto transform the character of the activity into substantial and non-isolated activity. *See, e.g.*, *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1389 (S.D. Fla. 2014) ("And the Court is not persuaded that [the defendant corporation's] periodic emails to Florida cruise operators to submit bids for contracts suffice to establish general jurisdiction [under Florida's long-arm statute], given that, even under the more relaxed standards for specific jurisdiction, a defendant's 'foot-fall' in Florida to negotiate a contract to be performed outside the state is not enough to establish personal jurisdiction over the defendant." (citing *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 811–12 (11th Cir. 2010))).

Narra attests that the actual development and maintenance of the Software was performed in California and India, and Plaintiffs do not come forth with any contrary evidence. That Plaintiffs paid Indyzen money for its services under their agreements does not establish general jurisdiction here. *See, e.g.*, *id.* at 1389–90 ("[T]he fact that Florida cruise lines sold tickets to [defendant's] tours is insufficient to confer general jurisdiction under the long-arm statute. Payments to [defendant] from Celebrity through wire transfers from Florida are also insufficient to establish general jurisdiction." (internal citations omitted)). Thus, the Court does not find that Defendants are subject to general personal jurisdiction under Florida's long-arm statute. For the same reasons, the Court also finds that the constitutional due-process standard of "continuous and systematic"

8

contacts with Florida is not satisfied.  *See Daimler AG*, 571 U.S. at 127, 137; *see also*

*Piazenko v. Pier Marine Interiors GMBH*, 314 So. 3d 438, 445 (Fla. 3d DCA 2020)

("'[S]ubstantial and not isolated activity within this state,' has been construed to mean a

showing of 'continuous and systematic general business contact' with the state." (quoting

*Vos, B.V. v. Payen*, 15 So. 3d 734, 736 (Fla. 3d DCA 2009))).

### B.  Specific Jurisdiction

"[A] Florida court can exercise specific personal jurisdiction—that is, jurisdiction

over suits that arise out of or relate to a defendant's contacts with Florida—if the claim

asserted against the defendant arises from the defendant's contacts with Florida, and

those contacts fall within one of the enumerated categories set forth in section

48.193(1)(a)."  *Thompson*, 174 F. Supp. at 1333 (citing *Schulman v. Inst. for Shipboard*

*Educ.*, 624 F. App'x 1002, 1004–05 (11th Cir. 2015)).  Plaintiffs allege that three statutory

categories give rise to specific jurisdiction here:

> 1. Operating, conducting, engaging in, or carrying on a business or business
> venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state.
>
> . . .
>
> 6. Causing injury to persons or property within this state arising out of an
> act or omission by the defendant outside this state, if, at or about the time
> of the injury, either:
>
> a. The defendant was engaged in solicitation or service activities within this
> state; or
>
> b. Products, materials, or things processed, serviced, or manufactured by
> the defendant anywhere were used or consumed within this state in the
> ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193(a)(1)1., 2., 6.

With respect to the statutory "arising from" language, "there must . . . be some 'direct affiliation,' 'nexus,' or 'substantial connection' between the cause of action and the activities within the state" to satisfy specific jurisdiction. *St. Martinus Univ., NV v. Caribbean Health Holding, LLC*, 2020 WL 956301, at *10 (S.D. Fla. Feb. 27, 2020) (quoting *Sun Trust Bank v. Sun Int'l Hotels Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001)); *see also Piazenko*, 314 So. 3d at 444 ("These dual requirements—that the defendant's conduct occur in Florida and that the plaintiff's cause of action arises from such Florida activity—are known as the statute's connexity requirement." (citing *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1135 (Fla. 3d DCA 2018))).

And even if Florida's long-arm statute is satisfied for specific jurisdiction, the Court must also analyze constitutional due process under a three-part test:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal quotation marks and citations omitted).

"The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and citation omitted). In determining whether jurisdiction would comport with traditional notions of fair play and substantial justice, the Court analyzes: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in

obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Id.* at 1358 (internal quotation marks omitted).

Regarding section 48.193(a)(1)1., Narra's affidavit conclusively establishes that he and Indyzen are not conducting a business or business venture in Florida, nor do they have offices or registered agents in Florida. *See generally RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 784 (11th Cir. 2014) (discussing factors to consider in analyzing business venture). Further, as mentioned previously, the Software at issue in this case was developed and maintained in California and India, not Florida. Defendants' purported claim to a 32% interest in SkyHop Tech—a corporation "headquartered" in Florida and incorporated in Delaware—is insufficient to establish personal jurisdiction here. *See, e.g.*, *Edwards v. Geosource, Inc.*, 473 So. 2d 36, 37 (Fla. 1st DCA 1985) ("The mere ownership of stock in a Florida corporation, coupled with the execution of a promissory note to purchase the stock, would be insufficient contact [under current subsection (1)(a)1.]." (citing *Uible v. Landstreet*, 392 F.2d 467 (5th Cir. 1968))). Thus, there is no specific jurisdiction under subsection (1)(a)1.

Next, Plaintiffs allege that specific jurisdiction exists under section 48.193(1)(a)2. because Defendants committed a tortious act in Florida by "extorting" Plaintiffs when Defendants sent emails to Scotto in Florida demanding cash in exchange for the Software. The Court disagrees. Plaintiffs allege violations of the CFAA and CADRA. The allegations that Defendants emailed Scotto, who happens to live in Florida, are insufficient by themselves to establish Florida's connexity requirement. *See St. Martinus Univ., NV*, 2020 WL 956301, at *10; *Piazenko*, 314 So. 3d 444; *see also Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("[M]ere injury to a forum resident is not a sufficient connection

11

to the forum.  Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.  The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

Although Defendants' physical presence in Florida is not required to find that a tortious act has been committed here, Plaintiffs' claims "must arise from the communications" to satisfy the nexus requirement.  *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *see also Cable/Home Commc'n Corp. v. Network Productions, Inc.*, 902 F.2d 829, 857 (11th Cir. 1990) ("[F]or personal jurisdiction to attach under the tortious activity provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant committed a substantial aspect of the alleged tort in Florida by establishing that the activities in Florida were essential to the success of the tort." (alterations and internal quotations marks and citations omitted)).

Because this is not a Rule 12(b)(6) motion, the Court need not delve into the details of each element of the CFAA and the CADRA, though whether Plaintiffs have adequately alleged personal jurisdiction is necessarily intertwined with whether the First Amended Complaint states a claim.  *See Wray v. Petersen*, 2018 WL 3719323, at *3 (M.D. Fla. July 17, 2018), *report and recommendation adopted*, 2018 WL 3707904 (M.D. Fla. Aug. 3, 2018) ("[S]pecific personal jurisdiction analysis requires evaluation of each count in a complaint." (quoting *Custom Fab, Inc. v. Kirkland*, 2014 WL 260090, at *2 n.2 (M.D. Fla. Jan. 23, 2014))); *Wendt*, 822 So. 2d at 1260 (holding that, in state court, trial court must

first determine whether the allegations state a cause of action when analyzing whether a tort was committed in Florida for personal jurisdiction purposes).

Here, count I of the First Amended Complaint fails to allege that Defendants violated the CFAA in Florida.  The Court agrees with Defendants that Plaintiffs fail to allege a jurisdictional basis for threatening to cause "damage" to a protected computer or for demanding money in relation to "damage" to a protected computer, where the damage was caused to facilitate the extortion.  *See* 18 U.S.C. § 1030(a)(7)(A), (C).  Plaintiffs have not alleged any "damage" or threats within the meaning of the CFAA; there are no plausible allegations here that Defendants have impaired the integrity or availability of the Software at issue or that they threatened to cause such damage.  *See id.* § 1030(e)(8) ("the term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information").  In fact, Narra's affidavit establishes that the Software is "currently" being maintained in accordance with ongoing agreements with Scotto, *see* (DE [50-1] ¶ 34), and the First Amended Complaint concedes that the Software is still operational, *see* (DE [46] ¶ 100).  Thus, count I fails to state a claim to confer personal jurisdiction.

Plaintiffs also fail to allege under count II how Defendants "intentionally accesse[d] a computer without authorization."  *See* 18 U.S.C. § 1030(a)(2)(C).  Narra attests that he and Indyzen have always had authorization to access the Software because they develop and maintain it, *see* (DE [50-1] ¶ 15), and Plaintiffs do not dispute that Defendants had authorization at some point.  *See Van Buren v. United States*, 141 S. Ct. 1648, 1658 (2021) (agreeing with appellant's interpretation that "without authorization" "protects computers themselves by targeting so-called outside hackers—those who 'acces[s] a

13

computer without any permission at all'" (alteration in original) (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009))).

Similarly, the First Amended Complaint is also devoid of factual allegations that Defendants exceeded their authorization by accessing restricted parts of the Software and obtaining or altering information.  *See* 18 U.S.C. § 1030(a)(2)(C); 18 U.S.C. § 1030(e)(6) ("the term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter"); *Van Buren*, 141 S. Ct. at 1662 ("[A]n individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him.").  Thus, count II also fails to confer specific jurisdiction.  And because Plaintiffs have failed to allege that Defendants' access was "without authorization" and that it caused "damage," count III also fails.  *See* 18 U.S.C. § 1030(a)(5)(C).

Regarding count IV, a CADRA violation occurs when "[a] person who knowingly and with intent to cause harm or loss":

> (1) Obtains information from a protected computer without authorization and, as a result, causes harm or loss;
>
> (2) Causes the transmission of a program, code, or command to a protected computer without authorization and, as a result of the transmission, causes harm or loss; or
>
> (3) Traffics in any technological access barrier through which access to a protected computer may be obtained without authorization,
>
> is liable to the extent provided in s. 668.804 in a civil action to the owner, operator, or lessee of the protected computer[.] . . .

14

Fla. Stat. § 668.803(1)–(3).  The terms "harm," "loss," "protected computer," and "without authorization" are defined by statute.  *Id.* § 668.802(4), (5), (6), (9).

Plaintiffs allege that Defendants intentionally withheld the Amazon passwords "and other portions" of the Software and that Defendants were no longer authorized to continue possession.  The Court does not find these allegations of continued possession sufficient to state a claim that Defendants obtained information without authorization or caused harm to protected computers under subsections (1) or (2), and there are zero allegations to state a claim under subsection (3).  Further, because of the statute's definition of "protected computer," "[a]ll CADRA violations—not just those arising under § 668.803(3)—. . . require proof of access through a 'technological access barrier.'"  *See Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1318 (11th Cir. 2020).  The First Amended Complaint simply tracks CADRA's language in conclusory fashion and fails to allege any facts about a technological access barrier.  Thus, count IV also fails to establish personal jurisdiction.  Lastly, because the substantive counts fail to confer personal jurisdiction, the Court has no personal jurisdiction for the declaratory relief claims avoiding arbitration, either.  *See, e.g.*, *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1333 (S.D. Fla. 2010) ("This Court has long-arm jurisdiction over a declaratory judgment claim if we have jurisdiction over the underlying cause of action." (citation omitted)).

Plaintiffs' final argument—that the Court has personal jurisdiction under section 48.193(a)(1)6.b. because Defendants caused damage to property—also fails.  Plaintiffs contend that SkyPlan is SkyHop Tech's "single most important asset" and that it is used by consumers (i.e., consumed) in South Florida.  Resp. in Opp'n 8 (DE [53]).  As discussed above, however, no allegations establish "injury" to the Software or a protected

computer within the meaning of the CFAA and CADRA.  *Cf. Bond v. Ivy Tech State Coll.*, 167 F. App'x 103, 105 (11th Cir. 2006) (stating that under the former version of subsection (a)(1)6.a., Florida Supreme Court had held that "mere economic injury is insufficient to subject a non-resident defendant to personal jurisdiction in Florida (citing *Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.*, 511 So. 2d 992, 994 (Fla.1987))).

Further, the Court does not find that the type of alleged injury here—Defendants' acting without authorization or exceeding their authorized access—constitutes an "injury" that was caused by a product serviced by Defendants when the product was consumed "in the ordinary course of . . . use."  *See* Fla. Stat. § 48.193(1)(a)6.b.; *see also Wetzel v. Fisherman's Wharf of Pompano Beach, Inc.*, 771 So. 2d 1195, 1198 (Fla. 4th DCA 2000) ("A defendant's connection to Florida making it amenable to suit under the long-arm statute is established by the defendant's 'business activities in Florida' and not by focusing solely on how the product causing injury entered the state." (citing *Davis v. Pyrofax Gas Corp.*, 492 So. 2d 1044, 1046 (Fla. 1986))).  Indeed, this is not a situation where a plaintiff is alleging that he was injured by actually *using* the Software developed by Defendants; Plaintiffs are simply alleging that, as of a certain date, Defendants are no longer authorized to retain possession of the Software.  Thus, the Court does not find that personal jurisdiction is satisfied under subsection (a)(1)6.b.  Nor is due process satisfied under the *Mosseri* test; Plaintiffs failed to carry their burden of showing that their claims "arise out of or relate to" at least one of Defendants' contacts in Florida.  *See* 736 F.3d at 1355.

## IV.    CONCLUSION

Because the Court does not have general or specific personal jurisdiction under Florida's long-arm statute and exercising jurisdiction would not comport with due process, the First Amended Complaint must be dismissed.   Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (DE [50]) is **GRANTED**, and the First Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.   The Court need not reach Defendants' alternative arguments that this venue is improper.   The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 18th day of October 2021.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel via CM/ECF

17